IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LIFE INSURANCE COMPANY OF THE SOUTHWEST, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 1:19CV128 |
| TASHA MARIE CALHOUN HILLS, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Life Insurance Company of the Southwest ("LSW") filed this action against Tasha Marie Calhoun Hills, alleging that Tysheen Lavell Hills made material misrepresentations or omissions in his Individual Life Insurance Application, or alternatively, that he fraudulently completed the application, which resulted in LSW's issuing him a policy with Mrs. Hills as the beneficiary. (See Compl. [Doc. #1].) LSW seeks a judgment declaring the life insurance policy void, and a rescission of the policy. (Id. ¶¶ 29-39.) This matter is before the Court on Mrs. Hills' Motion to Dismiss for Failure to State a Claim. (See Mot. to Dismiss [Doc. #9].)[1] For the reasons explained below, Mrs. Hills' Motion to Dismiss is DENIED.

---

[1] Mrs. Hills' Motion is considered despite her failure to comply with Local Rule 7.3(a), which requires a motion to be filed separately from its supporting brief. See L.R. Civ. P. 7.3(a); see also Johnson v. Angels, 125 F. Supp. 3d 562, 564 (M.D.N.C. 2015) (determining that although defendant failed to set out its motion as a separate pleading, the court had discretion when deciding whether to consider the motion).

I.

The facts, according to allegations in the Complaint and attached exhibits, interpreted in the light most favorable to the Plaintiff show the following.[2] On March 30, 2017, Mr. Hills applied for a universal life insurance policy from LSW, listing Mrs. Hills as the beneficiary. (Compl. ¶¶ 4, 13.) When applying for the application, he answered questions about his health, including the question, "Have you used any type of product containing tobacco or nicotine within the last five years?" to which he responded, "No". (Id. ¶ 14; Ex. 1 to Compl. at 72.) Mr. Hills affirmed that he "under[stood] and agree[d] that all answers given above . . . [were] to the best of [his] knowledge and belief complete and true" and that "[a]ll such answers and [the] application [were a] part of any contract issued." (Id. ¶ 15; Ex. 1 to Compl. at 74.) In reliance of these statements, LSW issued the policy, effective April 15, 2017. (Id. ¶ 17.) The policy included a provision governing any representations and an incontestability provision, which prevented LSW from contesting the policy "[after] [it] had been in force during the life of [Mr. Hills] for two years from the policy Date of Issue". (Id. ¶¶ 19-20; Ex. 1 to Compl. at 60.) However, "[o]n July 3, 2018, within the two-year period of contestability, Mr. Hills died as the result of injuries sustained in a motorcycle collision." (Id. ¶ 21; Ex. 2 to Compl.)

---

[2] When considering Mrs. Hills' Motion, the well-pleaded facts in the Complaint are accepted as true and are viewed in the light most favorable to LSW. Lucero v. Early, 873 F.3d 466, 469 (4th Cir. 2017).

On July 24, 2018, Mrs. Hills submitted a claim to LSW for payment of the policy's death benefit. (Id. ¶ 22; Ex. 3 to Compl.) During the claims process, Mrs. Hills responded to a questionnaire as follows in relevant part:

> 3. On the policy issue date: 04/15/2017 and 24 months prior to the policy issue date, did the insured use tobacco or nicotine products in any form?
> Answer: Cigarettes (yes)

(Id. ¶ 23; Ex. 4 to Compl at 1.)

After receiving Mrs. Hills' answers to the questionnaire, LSW requested more information from her. (Id. ¶ 24.) She provided LSW with a signed statement dated July 25, 2018, stating, "My husband did smoke. He probably smoked less than a pack of cigarettes in a one week time period. He had been smoking for 3 to 5 years." (Id.; Ex. 5 to Compl. at 3.) Additionally, she responded to the following questions:

> 1. To the best of your knowledge, did the insured ever smoke cigarettes, a pipe or cigars? Did the insured use chewing tobacco, snuff or tobacco of any kind? If yes, what which, [sic] and what brand?
> Answer: Only cigarettes – Newports
> 2. To the best of your knowledge, how many tobacco products, cigarettes, cigars or bowls of tobacco (pipe) did the insured use or smoke per day? On what types of occasions did the insured smoke or use tobacco? (e.g. after meals, during breaks, business meetings, etc.)
> Answer: Occasionally after meals
> 3. To the best of your knowledge, did the insured smoke cigarettes or use tobacco in any form during the time frame of March 20, 2017 to July 3, 2018?
> Answer: Yes
> 4. To the best of your knowledge, did the insured smoke or use tobacco continually up until the date of death or disability?
> Answer: Yes occasionally

3

5. To the best of your knowledge, did the insured ever quit smoking or using tobacco? If so, please give date. Did he/she quit using tobacco in any other form? If so, when? Why?
   Answer: <u>Yes – he quit several times 2014, 2015 – quit 2016</u>
6. To the best of your knowledge, did the insured begin smoking or using tobacco again at any time? If so, please give date.
   Answer: <u>Yes 2017, 2018</u>
7. To the best of your knowledge, did any physician ever advise the insured to stop smoking or using tobacco? If so, when?
   Answer: <u>Yes. MD's Always advise for you to stop smoking to promote good health</u>

(Id. ¶ 25; Ex. 6 to Compl.)

"Because Mr. Hills died within the two-year period of contestability", LSW requested his medical records from UNC Health Care. (Id. ¶ 26.) These records showed that on August 22, 2015, November 11, 2015, and June 29, 2016, Mr. Hills reported that he was a "Light Tobacco Smoker" of "Cigarettes". (Id.; Ex. 7 to Compl.) On November 27, 2018, LSW sent Mrs. Hills a letter, informing her that after further investigation, LSW believed that the information Mr. Hills provided in the policy application was "materially inaccurate". (Id. ¶ 27; Ex. 8 to Compl.) Specifically, LSW told Mrs. Hillls:

> [h]ad the information contained in the medical records been provided at the time the application was completed, it is our position the policy would not have been issued as it was. Based on the information stated above and the provisions of the Policy, we are rescinding the Policy and all attached riders.

(Id.; Ex. 8 to Compl.) In a separate letter, LSW explained that the policy was rescinded and enclosed a check refunding paid premiums with interest. (Id. ¶ 28; Ex. 9 to Compl.)

4

II.

LSW seeks a judgment declaring the life insurance policy void ab initio and rescinding the policy. Mrs. Hills moved to dismiss the action, purportedly pursuant to Rule 12(b)(6). She filed her Answer contemporaneously with her Motion, and LSW suggests in a footnote that the Motion, therefore, is improper, (Pl.'s Resp. in Opp'n to Mot. to Dismiss at 5 [Doc. #12]). However, her Motion is appropriately treated as one made pursuant to Rule 12(c), a motion for judgment on the pleadings. See Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) (explaining that when a motion to dismiss is filed simultaneously with an answer, it is construed as a motion for judgment on the pleadings).

A Rule 12(c) motion "should only be granted if, 'accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Priority Auto Group, Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). A Rule 12(c) motion is analyzed according to the same standard as a Rule 12(b)(6) motion. Id. "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint'". Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 606-07 (4th Cir. 2015) (citing to E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d

5

435, 448 (4th Cir. 2011) and Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013)). To survive motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). When analyzing a Rule 12(c) motion, the factual allegations of the Answer may be considered and "'are taken as true only where and to the extent they have not been denied or do not conflict with the complaint.'" Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (citing Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991)). The basis for Mrs. Hills' Motion to Dismiss is largely premised on facts not asserted or found in the Complaint or attached exhibits, i.e. that the Plaintiff's agent had made contemporaneous representations to the effect that, under the circumstances, Mr. Hills could properly and without ramification answer "No" to questions about tobacco use within two years of making the application. (See generally Mot. to Dismiss.) The Court may not consider that assertion at this stage of the proceeding.

III.

LSW seeks declaratory relief, the bases for which Mrs. Hills substantively disputes, however, she does not contest the Court's ability to declare the parties'

6

rights. (See generally Mot. to Dismiss.) "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2018). "'This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases.'" Nat'l Interstate Ins. Co. v. Morgan & Sons Weekend Tours, Inc., No. 1:11CV1074, 2013 WL 5430414, *11 (M.D.N.C. 2013) (citing U.S. Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998)); see also 28 U.S.C. § 2201(a). Moreover, "§ 2201 gives district courts the discretionary authority to grant declaratory relief '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Ohio Cas. Ins. Co. v. Williams, No. 1:09CV00513, 2010 WL 274233, *2 (M.D.N.C. 2010), adopted, Order (M.D.N.C. Sept. 13, 2010) (citing Aetna Cas. & Sur. Co. v. Quarles et al., 92 F.2d 321, 325 (4th Cir. 1937) and Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co. 139 F.3d 419, 422 (4th Cir. 1998)). Further, "if claims for non-declaratory relief are properly before the Court, and if 'the claims for which declaratory relief are requested are so closely intertwined with the nondeclaratory claims, "judicial economy counsels against dismissing the claims for declaratory judgment relief."'" Insteel Wire Prods. Co. v. Dywidag Sys. Intern. USA, Inc., No. 1:07CV641, 2010 WL 2471912, *5 (M.D.N.C. 2010)

(citing Great Am. Ins. Co. v. Gross, 468 F.3d 199, 210 (4th Cir. 2006)) (quoting Chase Brexton Health Servs., Inc. v. Md., 411 F.3d 457, 466 (4th Cir. 2005)).

Here, neither party disputes that a controversy exists. LSW alleges that Mr. Hills materially misrepresented or omitted, or alternatively, fraudulently provided responses on his life insurance application, resulting in LSW's issuance of a policy, which Mrs. Hills denies. Determining the validity of the life insurance policy would not only resolve the controversy between the parties but also would afford relief and certainty to the parties. Additionally, LSW's request for rescission is closely intertwined with its request for a declaratory judgment. Thus, the entirety of the action is properly within this Court's jurisdiction.

IV.

LSW's claims are based on Mr. Hills' alleged material misrepresentations and omissions, or fraud, that deceived LSW into issuing Mr. Hills' life insurance policy. Accordingly, LSW alleges that the policy is void pursuant to North Carolina General Statute § 58-3-10, which specifically provides that material or fraudulent representations will prevent recovery on a life insurance policy. N.C. Gen. Stat. § 58-3-10 (2018).

While procedural matters are governed by the Federal Rules of Civil Procedure[3], see Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995) (explaining that based on Erie R.R., 304 U.S. at 58, there is a "general rule that a

---

[3] In her Motion, Mrs. Hills applies North Carolina Civil Rules of Procedure, (see Mot. to Dismiss at 3); however, Federal Rules of Civil Procedure govern procedural issues.

federal court is to apply state substantive law and federal procedural law in diversity cases") (citing Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978)), because this case is before the Court on the basis of diversity jurisdiction, North Carolina choice of law rules govern which state's substantive law applies. Volvo Const. Equip. of N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938) and Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

Here, LSW seeks a declaration that the insurance policy, governing the parties' contractual rights, did not take effect due to material misrepresentations and omissions, or alternatively, that fraudulent representations voided the policy. See Cont'l Cas. Co. v. Physicians Weight Loss Ctr. Of Am., Inc., 61 F. App'x 841, 844 (4th Cir. 2003) (unreported) (applying North Carolina law instead of Ohio law and determining that the duty to defend a commercial insurance policy related to the "parties' contractual rights under the insurance policy"). "In North Carolina, it is a 'general rule' that 'the principle of lex loci contractus mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation' of an insurance policy." Id. (citing Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 466 (N.C. 2000)). However, pursuant to North Carolina General Statute § 58-3-1, "North Carolina has created a statutory 'exception to [the] general rule' of lex loci contractus", which states that "'[a]ll contracts of insurance on property, lives, or interests in

9

this State shall be deemed to be made therein.'" Id. (quoting N.C. Gen. Stat. § 58-3-1). For this exception to apply, a "'close connection' between North Carolina and the interests insured by the policy" must exist and "[w]here such a connection exists, . . . North Carolina law controls the interpretation of [the] insurance policy." Id. at 844-45 (listing facts that demonstrated a close connection between the insured's interests and North Carolina) (citing Collins & Aikman Corp. v. Hartford Acc. & Indem. Co., 436 S.E.2d 243, 246 (N.C. 1993)).

Here, both parties assume, without discussing, that North Carolina law applies, perhaps in part, because LSW seeks relief pursuant to North Carolina General Statute § 58-3-10. On the face of the Complaint, there appears to be a close connection between the interests of Mr. Hills and North Carolina, which is where Mr. Hills resided at the time he obtained the policy and made the statements at issue and where Mrs. Hills resides as the beneficiary. In addition, North Carolina has authorized LSW to transact business by insuring its residents. Therefore, at this stage of the proceedings, North Carolina substantive law is applied.

LSW seeks relief based on Mr. Hills' alleged material misrepresentation and omissions and, alternatively fraud, pursuant to North Carolina General Statute § 58-3-10. To allege fraud, LSW "must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).[4] LSW must "specifically allege 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Humana, Inc. v. Ameritox, LLC, 267 F. Supp. 3d 669, 676-77 (M.D.N.C. 2017) (citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) and Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008)). Thus, with particularity, LSW must plausibly allege that Mr. Hills: "(1) [made] a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) . . . with the intent to deceive; (4) which [did] in fact deceive; (5) resulting in damage to [LSW]." Rider v. Hodges, 804 S.E.2d 242, 248 (N.C. Ct. App. 2017) (citing Forbis v. Neal, 649 S.E.2d 382, 388 (N.C. 2007)).

LSW alleges that when Mr. Hills applied for life insurance, he falsely represented or omitted his use of tobacco or nicotine products with the intent to deceive LSW when he explicitly denied tobacco and nicotine use on his application, which deceived LSW into issuing him a life insurance policy. Upon information and belief, LSW would not have issued the policy as it did had Mr. Hills disclosed his tobacco or nicotine products use. After Mr. Hills' death, LSW allegedly discovered his use of tobacco or nicotine products when Mrs. Hills responded to LSW's investigation into her beneficiary claim. LSW then learned from Mr. Hills' medical

---

[4] Mrs. Hills neither argues that Rule 9(b) of the Federal Rules of Civil Procedure applies nor that LSW has failed to comply with Rule 9(b). (See generally Mot. to Dismiss.)

11

records that he had reported being a "Light Tobacco Smoker" of cigarettes on August 22, 2015, November 11, 2015, and June 29, 2016 despite explicitly denying the use of tobacco and nicotine products when completing his insurance application in March 2017.

Even though LSW has plausibly alleged fraud, North Carolina General Statute § 58-3-10 also provides relief in the face of <u>unintentional</u> material misrepresentation and omissions. <u>See</u> <u>James v. Integon Nat. Ins. Co.</u>, 744 S.E.2d 491, 494 (N.C. Ct. App. 2013) (explaining that "scienter . . . is not an element required to prove material misrepresentation"). LSW must allege "1) that the statement was false, and 2) that the statement was material." <u>United Prop. & Cas. Ins. Co. v. Surprenant</u>, No. 7:17CV96, 2018 WL 4655728, *4 (E.D.N.C. 2018) (citing <u>N. Nat'l Life Ins. Co.</u>, 316 S.E.2d 256, 262 (N.C. 1984) and <u>Bell v. Nationwide Ins. Co.</u>, 554 S.E.2d 399, 401 (N.C. Ct. App. 2001)). "A representation in a life insurance application is material 'if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the risk, or in fixing the rate of premium.'" <u>Hawkins v. Berkshire Life Ins. Co.</u>, No. 4:97CV00312, 1999 WL 1627979, *2 (M.D.N.C. 1999) (citing <u>Goodwin v. Investors Life Ins. Co.</u>, 419 S.E.2d 766, 769 (N.C. 1992)) (quoting <u>Tolbert v. Mut. Benefit Life Ins. Co.</u>, 72 S.E.2d 915, 917 (N.C. 1952)). "[A] material misrepresentation avoids a policy 'even though the assured be innocent of fraud or an intent to deceive or to wrongfully induce the assurer to act, or whether the

statement [be] made in ignorance or good faith, or unintentionally.'" United Prop. & Cas. Ins. Co., 2018 WL 4655728, at *4 (citing Thomas-Yelverton Co. v. State Capital Life Ins. Co., 77 S.E.2d 692, 695 (N.C. 1953) and Tharrington v. Sturdivant Life Ins. Co., 443 S.E.2d 797, 801 (N.C. Ct. App. 1994)); see also Laschkewitsch v. Legal & Gen. Am., Inc., 247 F. Supp. 3d 710, 718 (E.D.N.C. 2017) ("Regardless of the type of misrepresentation, material misrepresentations will void an insurance policy even if made unintentionally.") (citing Tharrington, 443 S.E.2d at 801).

Whether the misrepresentation or omission of an insured's tobacco or nicotine use on an application for life insurance constitutes a material representation is a novel issue for North Carolina.  However, when applying a Maryland statute similar to North Carolina § 58-3-10, the Fourth Circuit has found that misrepresentations and omissions about smoking to be material as a matter of law. See Parker v. Prudential Ins. Co. of Am., 900 F.2d 772, 777 (4th Cir. 1990) (holding that the insurance company was entitled to directed verdict and rescission of the life insurance policy was warranted because failure to disclose one's smoking history, resulting in a lower insurance premium, constitutes a material misrepresentation); see also Holsey v. Ohio State Life Ins. Co., 39 F.3d 1177 (Table) (holding that summary judgment was proper because the insured's failure to disclose his smoking history constituted a material misrepresentation, warranting rescission).  Nevertheless, the same allegations that plausibly state fraud plausibly state material misrepresentations and omissions.

V.

Mrs. Hills' Motion is captioned as a motion pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Civil Rule 83.1.  While Rule 54(d)(2) governs attorney fees after the entry of judgment, not only has Mrs. Hills not moved for attorney fees but also any motion would be premature at this stage of the proceeding. See Fed. R. Civ. P. 54(d)(2).  Additionally, Local Civil Rule 83.1 governs an attorney's role and ability to appear before the Court, see L.R. Civ. P. 83.1, and appears to serve no other substantive role here.

VI.

In her Motion, Mrs. Hills requests her own declaratory relief in a counterclaim, relief not sought in her previously filed Answer and Counterclaims, (see generally Answer [Doc. #11], Countercl. [Doc. #10], and Mot. to Dismiss at 6), which contravenes Federal Rule of Civil Procedure 13, requiring a counterclaim to be asserted in a pleading. See Fed. R. Civ. P. 7, 12, 13.  A motion to dismiss is not a responsive pleading in which a counterclaim can be asserted. See id.; see also Advanced Sterilizer Dev. & Design, Inc. v. Roadway Express, Inc., No. 1:02CV285, 2002 WL 31165144, *4 (M.D.N.C. Aug. 21, 2002) (citing Smith v. Blackledge, 451 F.2d 1201, 1203 (4th Cir. 1971)) (explaining that a motion to dismiss is not considered a responsive pleading).  Therefore, the declaratory relief Mrs. Hills seeks in her Motion is not appropriately before the Court.

14

VII.

For the reasons stated above, IT IS HEREBY ORDERED that Defendant Tasha Marie Calhoun Hills' Motion to Dismiss [Doc. #9] is DENIED.

This the 20th day of March, 2020.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge